We have three cases this morning, and the first is number 17-1866. Vargas Arjeta, or I'm not sure I pronounced that right, is it Arjeta, Arjeta? The Attorney General, Ms. Elbegin, Elbegin, and Mr. Robbins. Whenever you're ready. Excuse me a second. Hang on for just one second.  Okay. Whenever you're ready. Good morning, Your Honors, and may it please the Court. My name is Amanda Elbegin, and I represent Petitioner Jose Vladimir Vargas Arjeta. With the Court's permission, I'd like to request three minutes for rebuttal. Yes, ma'am. In the decision below, a single-member panel of the Board of Immigration Appeals erred both procedurally and substantively in denying his petitions for asylum, withholding of removal, and protection under the Convention Against Torture. How do I get around our recent decision in Searle as to where it is part of a particular social group? Well, first, Your Honor, under that recent decision which adopted the MEVG test, the newly articulated standard, on procedural grounds, this Court has held twice since MEVG that the failure to discuss and apply each of the three criteria under the new test is itself grounds for remand. And so, for that reason, you know, this should be remanded. Can we go back to what the IG said? So, Your Honor, because the BIA issued its own decision with its own reasoning, this Court should look to that decision. However, the Court can look to the IG's decision only insofar as the Board of Immigration Appeals adopted it. So, if you look at the opinion itself, the Board of Immigration Appeals only adopts the immigration judge's reasoning on two issues, on the nexus finding and the finding that the likelihood of future harm is attenuated by the closure of Mr. Vargas Argueta's father's business. It does not adopt the immigration judge's reasoning on the analysis of the particular social group or the Convention Against Torture analysis. And so, those are the main issues on appeal here, and we would contend the Court should not look to the immigration judge's opinion on those. But the BIA says, we found that those targeted for extortion by gangs or criminals are not per se members or cognates of a particular social group or targeted. Respondent has not shown otherwise. Why is that not addressing the issue? That addresses the issue. My response to Judge Sirico is just on the question of whether this Court should look to the immigration judge's opinion. But on that issue, Your Honor, that is just clearly not sufficient here. While the Board of Immigration Appeals is not required to give an exegesis on every particular issue, it is required to go through the test as laid out in MUDG as this Court held in Hernandez, and it is required to give principled reasons for its decision and explain why this proposed social group, when examined on a case-by-case basis, does not qualify as cognizable in particular under the standard. And it doesn't do that. And by citing two cases in which individuals who are generally fearful of gang violence or individuals who resist gang recruitment didn't qualify or may not have qualified, that isn't sufficient here because this is a different proposed social group. This proposed social group involves people who engage in a particular act of resistance to the gangs, and that is a refusal to pay extortion fees. And this Court has found that there are instances where individuals who resist gangs in a particular way can constitute a particular social group. What's your best case? So in Garcia v. Attorney General, this Court, Judge Hardiman wrote an opinion that individuals who testify against a gang can constitute a particular social group. And in Hong, this Court held that individuals who inform against and are willing to testify against a gang may constitute a particular social group and are remanded on those grounds and on procedural grounds. Here you have a particular social group or a proposed social group that is, you know, closer. We would contend. Garcia decided with a socially distinct element in it? It wasn't. It was decided before the Court. That's what I think is a problem here is the socially distinct aspect, that they're perceived as a distinct social group. By those within the society. Right. And if anything, Your Honor, that is a reason for remand here. This Court should not, you know. Why is that a reason for remand? Because we don't have a finding from the agency. It's a factual finding of whether society perceives this group differently or not. And that is why this Court has held that the agency is required to first examine each of the three prongs because while it's a legal conclusion, there are factual findings that underpin that legal conclusion. And so here we don't have that finding. This Court can't evaluate the agency's assessment of whether society does perceive this group differently. Why is this immutable? So, Your Honor, under this Court's precedence and the BIA's precedence, a shared common experience can form the basis for an immutable characteristic. So here, the proposed social group each share a common experience, and that common experience is the act of resisting and refusing to pay the extortion fee. And that, you know, is akin to various social groups at this Court and the BIA have recognized in which, for example, in In re Casinja, you have a group of young women who oppose, who have not experienced but oppose the practice of female genital mutilation. That is a sufficiently immutable characteristic, that opposition, to warrant a finding of a particular social group. Although in that case, there was a concurring opinion that seemed to say that it really wasn't, the definition of social group really wasn't in much dispute in that case. Well, that may be the case. I would contend that the BIA's decision in MEVG explicitly refers back to In re Casinja and says, while we have articulated a new standard, looking at the facts of that case and the decision that the BIA made there, that group would constitute a particular social group under the new standard. And so that, I think, weighs powerfully in favor of the petitioner here. What about the fact that he moved in with his sister in San Salvador and it appears not to have been a problem once he left where he was previously, where the threats were? Your Honor, I would disagree with that. I think the record demonstrates clearly that when he moved to San Salvador to stay with his sister, the gangs followed him there and threatened him there. And his sister had to move as a result, and he fled to the United States after that. And the government concedes in its brief that the gang – So what happened to him and his sister in San Salvador then? So I think the government even concedes in its brief that when he went to his sister in San Salvador, the gang followed him there and threatened him there as well. So the finding below that he can safely relocate within El Salvador is just unreasonable on the face of the record. That's not true, and there's no evidence that he moved anywhere else within El Salvador where the gangs didn't follow him or couldn't contact him. He's also said, you know, there's also record evidence that his father moved because they, you know, continued to come after his father. And so that particular finding – Although he's no longer in the carpentry business, right? Correct. And wasn't that where the extortion initially started? That is where the extortion initially started, Your Honor. But the idea that the agency and the government seem to adopt that it's the existence of the carpentry business that corresponds, that prompted the persecution, is just unreasonable on the face of the record here. It's not the existence of the business. It's the fact that the petitioner and his family refused to pay the extortion fees. The business existed for three years while the family was being extorted, and they were not threatened because they were paying the extortion fees. It's the fact that the family and Mr. Vargas Argueta refused to pay the fee that the gang came after him and persecuted him. How is society going to know that he refused? I mean, that's pretty much an individual situation on a case-by-case basis that someone refuses. How is that going to be perceived by society? So a couple of answers to that, Your Honor. As I said, in MEDG, the BIA recognized that even in a case like Kasinga, society can recognize individuals who oppose a prevalent practice as distinct. Because the practice is so prevalent, opposition to it can make them distinct within society. So just like the women in that case opposed a very prevalent practice in their community, here, too, there's record evidence that 79% of businesses are extorted in El Salvador, or at least were in 2015 or 2016 when that report was issued. The act of resistance and refusal to pay does make him distinct in that sense. The BIA in MEDG and also, I believe, in SEG held that the persecution itself, while not sufficient to create or form a basis for a particular social group, persecution on the basis of a certain kind of act, like resistance to paying a fee, can constitute the basis or evidence for a social distinction finding. So the fact that the gangs actually go after and kill and threaten and burn the businesses of individuals who refuse to pay extortion fees, that alone does make them distinct in the eyes of society. But the youth who have rejected gang membership has been held not to be socially distinct. How do you – I mean, that seems to be parallel to what we have here. Well, there's record evidence that the act of refusing to pay the extortion fee is viewed differently by the gangs, that it's a particularly serious act of resistance because extortion fees are the lifeblood of the gangs. What if – so if a petitioner had not been threatened in the same way or beaten up, as was the case here, would that make a difference? That is, if they just continued to pay the money and they would not qualify under your standard then? Well, I think there would be a difference, Your Honor, and that would be that they wouldn't be able to show persecution on the basis of their particular social groups. There wouldn't be any nexus finding or any finding of persecution whatsoever. I thought there was some evidence in the record that they were paying $100 a month and then they wanted more money. And that was the reason why they stopped paying, because they couldn't afford it. Correct, Your Honor. The petitioner doesn't claim that he resisted on a political ground or some philosophical ground. But it's important to clarify that it's not the act of extortion that is the persecution here. There is no confusion here between the persecution and the identity of the particular social group. Here, Mr. Vargas Argueta clearly claims that his membership in the proposed social group is based on the fact that he was extorted and resisted. And the persecution is not the extortion, but the fact that he was brutally beaten five times and issued death threats. And you seem to be – maybe I'm wrong, but you may be discounting the fact that he did, as Judge Ambrose said, he did move to San Salvador with his sister. And even though he was threatened, we'll get you no matter where you go. Is there any evidence that anything happened while he was in San Salvador? Yes, Your Honor. The record shows in his credible testimony, or the immigration judge found him completely credible, he testified to the immigration judge and in his declaration to the court that the gangs did follow him to his sister's home. That seems to have been lost on the immigration judge, but that is very clearly in the record that he was followed there and that the gangs found him and threatened him there and that his sister moved immediately thereafter as a result. The credibility determination by the IJ, was that on everything that he said, or was it piece by piece? I think it was a general credibility determination that he was consistent, that his statements to the immigration judge was consistent with the declarations and other evidence he had submitted in the record. So I don't believe the immigration judge distinguished between any particular part of his testimony.  Thank you very much. Thank you. Mr. Robbins. May it please the court, my name is Jonathan Robbins, here on behalf of the Acting Attorney General. Good morning to everyone. As Your Honors have discussed, the key issue in this case is whether the record compels reversal of the agency's determination that Petitioner didn't establish eligibility for asylum, withholding of removal, and protection under the Convention against Torture. Well, what about the lack of analysis in BIA's opinion? Well, with respect to Petitioner's claim that this is a legally deficient claim, I disagree. It's true, I'll grant you the Board took a shortcut by relying on precedent, but that's a legally permissible thing for the Board to do. Bear in mind that there have been a lot of Board decisions, including its seminal cases in MEBG and WGR, which have dealt with the same root problem that is in Petitioner's case, which is this fear of criminal gang activity. And the Board is entitled to say, look, this is ground that we've covered. Your case isn't meaningfully distinguished from the other cases in which we've dealt with this. That's something that all courts do, including this court, I might add. And that is not a legally deficient way to handle a case. Now, if the Board hadn't dealt with gang cases that were of a similar nature in the past, then maybe that procedural deficiency argument would have more weight. But that's clearly not the case here because there is a plethora of law on cases with – I would say this is probably the most common type of case that my office is seeing now. We see just a lot of these cases of people coming out of Central America, El Salvador, Honduras, Guatemala. But you're saying targeted for extortion, which was the reasoning and the precedent relied upon by the BIA, is the same as those who have refused to pay? The iteration of the group is slightly different, Your Honor. We see many different iterations of the group because the case law is quite clear that, you know, we have the nexus requirement, but the two most common types of harm that we see that fall outside the nexus requirement that don't get you relief for asylum and withholding removal are – Speak a little more slowly, please. Sure. The most common types that we see that fall outside of the types of harm that would be covered under refugee law are victims of what I would characterize as personal harm and victims of crime. And there's a lot of case law in this court and really all the different courts of appeals that have continuously and repeatedly said that simply fearing criminal gang activity does not implicate the requisite nexus to establish eligibility for asylum, withholding, or removal. And we see a lot of these cases of applicants for asylum, withholding, or removal who are coming out of Central America with this precise problem. And so what they do is we see them try to tailor different social groups to try and craft a way in on the nexus requirement. This case is really a perfect example of that. In this case, it happens to be young men who have been – who have refused to pay extortion fees. But we've seen a thousand iterations of people trying to get in with the same root problem in their case. But he has been a victim of personal harm. He has. There's no question about it. But unfortunately, simply being a victim of personal harm – in this case, I would more characterize it as a victim of crime – we've seen that, unfortunately, those cases, even though people do face legitimate harm, that's not covered under – for relief under the United States Refugee Law. What is – has to be distinct, viewed by society as a distinct group? I'm not sure what that means or how you show that. How do you show that? Well, you can show it through societal evidence. The board has said that it's really a factual analysis. You can often – there are different ways you can do it, different types of evidence that can support it. What we're looking at is whether society views the group as a faction within society, is essentially what the board has said. So there – oftentimes, the things that I look for are, does the group have a name? Is it referred to by a name in society? Then women who have refused genital mutilation, they're a faction? I'm not 100 percent clear on what the cases on the female genital mutilation cases have said with respect to social distinction. I don't remember if it was – if – Well, they said they were. Well, they might have. Not a lot of analysis. But this particular – with respect to this particular group, as Your Honor has pointed out, this isn't a group that is found to be socially distinct. In fact, if you look at the country conditions reports, the criminal gangs in these Central American countries, they go after everybody, not just young men who've been extorted, but young women who are vulnerable, business owners. I mean, I've seen groups – taxi drivers. Everybody who's a victim of crime picks whatever trait they happen to have and tries to squeeze it into this famously indeterminate term social group because that's really the only chance they have in light of the case law, which has repeatedly said that being a victim of crime doesn't implicate a nexus to a protected ground. It's really the only legal way they can try to persuade a court to grant them relief. And I don't mean to suggest that all gang cases are – there's a blanket rule against all gang cases. If you can show that there's some other motivation, you might be able to establish a claim for relief. But the problem with Petitioner's case in here is there's no evidence that there's any other motivation by the gangs other than the simple desire to extort them for money. What would be the other motivation that would carry the day? Well, in another case, for example, the board gave an example of that in MEVG. They said there's – a gang might go after somebody in part because of a desire to extort, but also because they have an animus against the fact that they're homosexual. So if you have a mixed motive like that, you could potentially show that a gang has a motive. Certain gangs, you know, like you could think like a white power gang might target people of color, right? You could see how that – there are other motivations that could be intertwined with the gang's motivations. But when the gang motivation is solely shown to be a desire to either make money or to extort or to expand its base or expand its power, that has repeatedly been held by this court and really all the courts of appeals to not implicate the nexus by itself. And – What about the question – the point about government acquiescence, turning a blind eye? You see police socializing with gang members. You see police driving gang members around town. At least one murder was committed in retaliation for a police report. Wouldn't it be fair to say in that context, if that can be shown, that the local police have acquiesced in the gang's activities? I think it's fair to say it's a close question in this case. There is some evidence that Petitioner provided, particularly in terms of testimony, where he talked about how the police were, for lack of a better term, chummy with the gangs in his area. The problem is that when he testifies to what happened to him, he didn't testify that there was any police involvement with his. He said that the gangs threatened him not to report to the police and that they threatened that they would know about it. But you also have other evidence on the other side, particularly in the country reports, which shows that the Salvadoran government is taking steps to try and go after this police corruption. So under the standard review, the record has to compel a contrary conclusion. I do think it's a close question in this case, but I don't think the record compels one conclusion over the other. I think the immigration judge was reasonable in saying, look, when you have this evidence and you have the fact that it wasn't – that the police didn't – I mean, he gives the example that the police drove people around in squad cars, but when it came to his own testimony, he doesn't say the police with him were driving around the gangs in squad cars. So when you have the lack of that police involvement with respect to him and you have the country conditions reports which show that the country is trying to go after and prosecuting people, police corruption, I'm not saying they're effective, but in terms of that owner's burden of proof that you have with respect to cat acquiescence, where you have to show a clear probability, I think the evidence could pretty reasonably go both ways in that under the standard review, the court should defer to the findings of the immigration judge on that point. There's another aspect to this social group. This particular social group – and it harkens back to the problem of nexus and the case law. What we see in a lot of these cases is that people will try to insert nexus into the definition of their social group because they realize that the case law shows that being a victim of crime doesn't implicate the requisite nexus. And so they try to make nexus a foregone conclusion by tailoring the social group in a way that makes nexus almost automatic. It makes it a foregone conclusion so they can bypass the bifurcated analysis where you have the cognizability of the group and then you look at the nexus. And if you look at this case, at this particular social group, alarm bells should be going off in your owner's head. This group is defined by the very fact that he's targeted for harm. The Supreme Court has said that in order for the nexus requirement to be met, the group has to exist before the persecution happens because otherwise it can't be the persecutor's motive. Petitioner isn't a member of this particular group of people who have been extorted until after he's been extorted, so it can't be the motivation of the gang. So what happens if they're not extorting but they're going after young men for the purpose of joining the gang, and if they don't join the gang they could be killed? That's actually been covered by the Supreme Court. The forcible recruitment issue was covered in INS against Elias Zacharias. It's probably the most widely cited modern immigration case there is. And the Supreme Court obviously determined that what we're looking at is the persecutor's motive in that case. They have to know about the characteristic and they have to care about the characteristic. That's the first question you ask in any nexus analysis. And if the group doesn't exist until after the persecution happens, the answer to that question is going to be no, it's not the persecutor's motivation. And again, MEVG and WGR also make that point. They point out that the group has to exist independently of the persecution. This group that's iterated here, the IG didn't consider it because it was first raised on appeal to the board, and the board noted that. It says on appeal he's raising this group. And they cite it to MEVG and WGR and said, look, this is the type of group that we've rejected before. Your Honors asked a question to my colleagues about relocation. Respectfully, I don't think relocation is before the courts. The board declined to address the issue of relocation in this case. They said we're making a finding on nexus here, we're not going to reach that issue. It's right on page two and three of the administrative record. So the court under Chenery can't address, I think it's premature to address that. If the court were to disagree with the government on the issue of nexus and the cognizability of the social group, then the case would have to be remanded for the board to address that finding in the first instance. You were defined, the group was defined as those who have refused to pay extortion fees. I mean, I still think... And forget the targeted by the gangs. I think that's still the problem of being defined by the fact that you've either been persecuted or targeted for persecution, right? It could be either or. Well, no, if they just have refused to pay, and it's known by their neighbors, ooh, they're not paying these fees, something's going to happen to them. That could be a group separate and apart from the fact that they then are persecuted after the fact. But you've defined them before without the concept of persecution. I mean, I'm not sure that I can separate... I'm not sure that I agree that can be separated out when you define the group in that way. If you're saying that I'm being... Petitioners try to make this argument that the threats should be somehow separated from the enforcement of the threats, and that one should be considered persecution and one shouldn't be. But that's never the way it's been treated, at least as far as I've seen in the asylum jurisprudence that we have. Take, for example, INS against Elijah Zacharias. The Supreme Court didn't separate out the attempt at recruitment from the retaliation for refusing to be recruited. That's always been considered the same line of persecution. So I don't know that it can be separated out in that way. I would say that there are situations where you might separate out persecution if the persecutor is different. So, for example, suppose you had an individual... Say a woman had been raped, and then she was subject to stigma because of that rape and then was subject to a different form of persecution in the form of honor killing. In that situation, then you might separate out the different acts of persecution. But in the law, I don't think that you separate out the threats from the enforcement of the threats. To me, that's the same continuing line of persecution in that when you define the group in that way, it's not fair to separate those out. I would also point out that in other areas of asylum law, we don't separate them out. So, for example, when we're looking at whether harm rises to the level of persecution, we don't say, well, there they were threatened, that's not persecution, and here there was the enforcement, that was persecution. We always look at it as the same thing, as a continuing line of persecution. So I would reject the notion that those two things can be separated out. Well, I guess they have argued that the social group is those who have been persecuted because of. Okay. Are there any further questions? No. Thank you very much. Thank you very much for your time, Your Honors. Thank you. Just three points to make on rebuttal. First, I think the concern here on the part of the government and on the part of the agency is that, you know, this is like one of many cases in which individuals claim they fear gang violence generally and that they have so many cases like this coming in, and so many people in El Salvador can claim that they fear gang violence. But this isn't a case that would open the floodgates. This is a very specific and much smaller segment of society, individuals who resist extortion fees and are actually brutally beaten and threatened with death as a result. I don't think most people in El Salvador would qualify under that social group. The second point is that on the government acquiescence point that Your Honor raised, there is really stark and powerful record evidence here of government acquiescence, and as the immigration judge noted in his opinion, it really, Mr. Vargas Argueta did an outstanding job putting together this record, and there is more than sufficient evidence both in terms of his local police force. But he has to have filed some type of complaint. I don't know of any police report that he filed. Well, Your Honor, I think in this case, it's clear from the record that he couldn't report to the police because the gang told him that if he reported to the police, they would kill him. He found that to be a credible threat because he knew of others who… In effect, the police were taken off the playing field, aren't they? I mean, willful blindness, you have to know something and say, I'm going to turn a blind eye. Maybe they're turning a blind eye to the whole concept of extortion in general, but there's no evidence that we have in this record that the police, other than they did certain things by in effect acting as a cab service for some gang members, et cetera, that they did anything here to say, oh, we know about him, but we're not going to do anything about it. I mean, in this case, you have really a level above willful blindness in that they are participating, right? They are chauffeuring them around the neighborhood as they extort people and threaten people. In addition… Look, I'll give you an example. So you have general information, but you have to make it specific. And one of the specific items you would note is that somebody did report it and that person was killed. Well, are there other people who have reported, many others, and they haven't been threatened or harmed in any way? We don't know what the evidence is. So general evidence is not going to get us there when he has not alerted the police of the extortion threats against him. Well, the agency has to evaluate the record before it, Your Honor. And while it's true, he can't always prove it. He can't prove a negative necessarily, right? He doesn't have all of that evidence, and that may not be true. But here you do have evidence on a national scale as well in the record that the gangs have infiltrated the police force and the military on a national scale. You have evidence of impunity at all levels. You have evidence of members of the police seeking to investigate gang members for these kinds of practices. And not only do the investigations get shelved, but they themselves are then subject to investigation. There's evidence on the record that countervails the evidence that the agency and the government is pointing to that wasn't considered here. And additionally, I see I'm out of time. What is the evidence as to him particularly, Your Honor, that he alerted the police? The police somehow were aware of what was going on in his particular case. I mean, he argues that, I mean, he's from what I believe is a small town, and he testifies that, you know, two houses down from him, the gangs are socializing and drinking with the police and that the police engage in this and are fully in the pocket of the gangs. I don't know that he needs to show that in his exact situation that they were chauffeuring the gang members to his home in particular to show acquiescence. Acquiescence can be shown through country reports alone. And so, you know, on that ground, Your Honor, we think the Kat claim analysis is woefully deficient. Thank you very much. I understand that your firm is taking this matter pro bono. Yes. I want to thank you. I want to thank your firm. I'm sorry, your name is? Thank you as well. You did an outstanding job. Thank you very much. Truly. Is this your first oral argument before a circuit court? A second. Second. Well, you should do many more. Thank you very much. And thank you also to Mr. Robbins. I would ask if it is possible if there could be a transcript prepared of this oral argument, and if you would pick that up, please. Sure. All right. Thank you very much. Again, it's a privilege having you here. Thank you very much, Your Honor. That's yours.